# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FFB BANK, | Case No. 1:24-cv-01580-KES-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART AND ORDER VACATING HEARING** |
| v. | |
| CREDIT MOJO LLC, et al., | |
| Defendants. | (Doc. 23) |
| _____/ | **OBJECTIONS DUE: 21 DAYS** |

## I.  INTRODUCTION

On October 20, 2025, Plaintiff FFB Bank ("Plaintiff") filed a motion for default judgment against Defendants Credit Mojo LLC ("Credit Mojo"), and Rondi R. Lambeth (collectively "Defendants"). (Doc. 23.) No opposition to Plaintiff's motion was filed. The undersigned has reviewed the motion and supporting documentation and determines that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g).[1] As such, the hearing on the motion set for December 10, 2025, shall be VACATED.

For the reasons set forth below, the undersigned RECOMMENDS that Plaintiff's motion for default judgment be GRANTED IN PART to the extent that Plaintiff requests that the Court enter default judgment against Defendants Credit Mojo and Lambeth.

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B).

## II.     FACTUAL BACKGROUND

On December 23, 2024, Plaintiff FFB Bank ("Plaintiff") filed their complaint against Defendants alleging claims of breach of contract and guaranty. (Doc. 1). Defendants were served with the summons and complaint on January 1, 2025. (Doc. 4). Plaintiff filed a First Amended Complaint as a matter of right on January 28, 2025. (Doc. 5). Defendants answered Plaintiff's original complaint on February 3, 2025. (Doc. 7). Plaintiff filed a motion to strike Defendants' answer and to enter default on February 24, 2025. (Doc. 11). On March 3, 2025, the Court issued an order to show cause regarding subject matter jurisdiction, (Doc. 12), to which Plaintiff responded on March 5, 2025, by amending their complaint. (Doc. 14).

Plaintiff's claims in their Second Amended Complaint stem from an alleged written contract titled "Credit Agreement and Business Loan Agreement" ("the Agreement"), which Plaintiff alleges extended a revolving line of credit to Defendant Credit Mojo in the sum of $100,000 for business use only. (Doc. 14 ¶ 7; *see also id.* at 9–15[2]). Plaintiff alleges that pursuant to this Agreement, Defendant Credit Mojo, for their part, was required to make regular monthly payments of 3% of the principal owed plus interest or, alternatively, $750.00 plus interest. (*Id.* ¶ 8; *see also id.* at 9). Additionally, Plaintiff alleges the Agreement included a term that required the full amount owed of $100,000 to be due on demand in the form of a balloon payment. (*Id.* ¶ 9; *see also id.* at 10).

Plaintiff alleges that on July 19, 2024, it sent Defendant Credit Mojo LLC such a demand, which required Defendant Credit Mojo LLC—and Defendant Lambeth as guarantor—to pay the principal amount of $100,000, plus accrued interest and late charges in the amount of $3,415.43 by July 19, 2024, with interest accruing at a per diem rate of $43.75. (*Id.* ¶ 11). Plaintiff alleges that they provided further notice that failure to pay these amounts would result in a default on Defendant Credit Mojo's obligations in the Agreement, which provided for recovery of attorney's fees, costs, and interest. (*Id.* ¶ 12). Plaintiff alleges that to date, Defendants have not made the payment in

---

[2] The undersigned recommends the Court take judicial notice of the Agreement, as attached to the Second Amended Complaint, (Doc. 14 at 9–15). *See United Specialty Ins. Co. v. Certain Underwriters at Lloyd's of London*, No. 18-CV-07504-SK, 2019 WL 7810813, at *2 (N.D. Cal. Mar. 19, 2019) ("The Court takes judicial notice of the [contract] because it is integral to the allegations presented in the Complaint and because neither party disputes its authenticity. . . . In the context of breach of contract cases, '[j]udicial notice of contracts is proper when contracts are integral to the complaint and no party disputes the contracts' identity and accuracy.'" (quoting *Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*, No. CV 14-3779 RSWL, 2014 WL 12588687, at *4 (C.D. Cal. Oct. 2, 2014))).

violation of the Agreement. (*Id.* ¶¶ 12, 14).

Defendants were served with the Second Amended Complaint on March 21, 2025. (Doc. 17). Neither Defendant responded to the Second Amended Complaint. (*See* Docket). Plaintiff requested that the Clerk of Court enter default against Defendants on April 15, 2025 and default was entered that day. (Docs. 19 & 20.) On October 20, 2025, Plaintiff filed a motion for default judgment against Defendants, which is currently pending before Court. (Doc. 23).

### III. DISCUSSION

**A.  Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

**B.  Analysis**

    **1.  The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

        **a.  Possibility of Prejudice to Plaintiff**

The first *Eitel* factor requires a court to consider the possibility of prejudice to a plaintiff. *See Eitel*, 782 F.2d at 1471. If default judgment is not entered, Plaintiff will effectively be denied a

remedy until Defendants participate and make an appearance in the litigation—which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See Bmo Bank N.A. v. Bring Transp. Inc*., No. 1:24-CV-00809-KES-EPG, 2025 WL 2611852, at *3 (E.D. Cal. Sept. 10, 2025) ("If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that Defendants will not defend this action and the Complaint alleges that Defendants are in default of the unpaid amounts owed to Plaintiff under the terms of the agreement and corresponding guaranty."), *report and recommendation adopted sub nom. BMO Bank N.A. v. Bring Transp. Inc.*, No. 1:24-CV-00809-KES-EPG, 2025 WL 3004099 (E.D. Cal. Oct. 27, 2025). Therefore, the undersigned finds that Plaintiff would be prejudiced if the Court were to deny its motion and this factor weighs in favor of default judgment.

### b. Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The next *Eitel* factor includes an evaluation of the merits of the substantive claims pleaded in the complaint and the general sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Before evaluating the merits of the substantive claims and sufficiency of the Second Amended Complaint, the undersigned notes that the parties' contract contains a choice of law provision for California law. *See* (Doc. 23-2 at 14 ("This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.")).

Turning to Plaintiff's breach of contract claim against Defendant Credit Mojo, the elements of breach of contract under California law are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). The

undersigned finds that Plaintiff has alleged sufficient facts for a claim for breach of contract against Defendant Credit Mojo. As alleged in Plaintiff's Second Amended Complaint, Plaintiff and Defendant Credit Mojo agreed to certain terms regarding a loan for business purposes, Plaintiff performed its obligations, Defendants failed to repay the loan, and Plaintiff suffered damages as a result of the breach. (*See* Doc. 14 at 2–5).

As to Plaintiff's claim against Defendant Lambeth, the elements for a breach of guaranty claim under California law are generally the same as the elements for a breach of contract claim: (1) existence of the guaranty agreement; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to plaintiff. *See TBK Bank, SSB v. Singh*, No. 117CV00868LJOBAM, 2018 WL 1064357, at *4 (E.D. Cal. Feb. 23, 2018), *report and recommendation adopted*, No. 117CV00868LJOBAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018); *Alwood v. Montecalvo*, No. CV1408139MMMPJWX, 2015 WL 13306204, at *6 (C.D. Cal. Nov. 3, 2015); *Rancho Mountain Properties, Inc. v. Gray*, No. 11-CV-00358 BEN BLM, 2012 WL 1192755, at *2 (S.D. Cal. Apr. 9, 2012), *aff'd*, 578 F. App'x 662 (9th Cir. 2014). The undersigned finds that Plaintiff has alleged sufficient facts for a claim for breach of guaranty against Defendant Lambeth. Plaintiff has sufficiently alleged facts that Defendant Lambeth breached the guaranties by alleging a breach of the Note and Agreement and a corresponding failure of Defendant Lambeth, a guarantor, to pay the amount due under the Note and Agreement following the breach. (*See* Doc. 14 at 2–5; *see also id.* at 11 ("GUARANTOR. This Loan is guaranteed by LAMBETH, RONDI R whose address is . . . . Guarantor agrees that in the event of Borrower Default, Guarantor will pay the Loan in full upon Lender's demand.")).

The Second Amended Complaint therefore sufficiently sets forth Plaintiff's claims for breach of contract and guaranty, and there appears to be merit to the substantive allegations. *See Bmo Bank N.A.*, 2025 WL 2611852, at *3; *Christofferson v. All Pure Pool Serv. of Cent. Cal., Inc.*, No. 118CV01370AWISAB, 2020 WL 3249323, at *14 (E.D. Cal. June 16, 2020), *report and recommendation adopted sub nom. Christofferson, v. All Pure Pool Serv. of Cent. Cal., Inc.*, No. 118CV01370AWISAB, 2020 WL 3819413 (E.D. Cal. July 8, 2020). The undersigned therefore finds that the second and third *Eitel* factors are satisfied and weigh in favor of default. *See, e.g.*,

*Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, No. CV1309221SJOFFMX, 2015 WL 9690322, at *3 (C.D. Cal. Sept. 29, 2015) (stating that the second and third *Eitel* factors together "require that a plaintiff state a claim on which the plaintiff may recover" (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002))).

### c. The Sum of Money at Stake in the Action

The fourth *Eitel* factor requires the court to consider the sum of money at stake. *See Eitel*, 782 F.2d at 1471. The undersigned acknowledges that "[d]efault judgment is disfavored when a large amount of money is involved or is unreasonable considering the defendant's actions." *See Moore v. Cisneros*, No. 1:12-CV-00188-LJO, 2012 WL 6523017, at *4 (E.D. Cal. Dec. 13, 2012). However, as will be discussed in detail below, Plaintiff requests a total of $129,647.55—which includes the remaining principal of the loan amount, interest, costs, and fees. (Doc. 23 at 2.). The undersigned finds this amount is not excessive as it is based upon Defendants' obligations under the terms of the Agreement.

Accordingly, the undersigned finds that the fourth *Eitel* factor weighs in favor of granting default judgment.

### d. The Possibility of a Dispute Concerning the Material Facts

The fifth *Eitel* factor is whether there is a possibility of a dispute concerning the material facts. *See Eitel*, 782 F.2d at 1471–72. Regarding this factor, the undersigned finds that no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917–18, and Defendants have submitted nothing to contradict the well-pleaded allegations in the complaint. *See United Specialty Insurance Co. v. Saleh*, No. 1:16-cv-00632-DAD-MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Accordingly, the undersigned finds this factor favors entry of default judgment.

### e. Whether Default Was Due to Excusable Neglect

The sixth *Eitel* factor requires a court to evaluate whether the default of Defendants was due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Defendants failed to file responsive pleadings or

6

oppose Plaintiff's motion for default judgment. Therefore, the undersigned has no evidence before it to demonstrate Defendants' failure to participate in the litigation is due to excusable neglect. *See Protective Life Ins. Co. v. Phillips*, No. CIV S-08-0035 JAM EFB, 2008 WL 4104284, at *3 (E.D. Cal. Aug. 26, 2008) (stating that a defendant's "failure to respond cannot be deemed 'excusable neglect'"). Thus, the undersigned finds that this factor also weighs in favor of granting default judgment.

### f. Policy Favoring Decision on the Merits

The final *Eitel* factor requires a court to take into account the policy that default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the Defendants' failure to appear has made a decision on the merits impossible at this juncture." *Arroyo v. J.S.T. LLC*, No. 1:18-CV-01682-DAD-SAB, 2019 WL 4877573, at *11 (E.D. Cal. Oct. 3, 2019), *report and recommendation adopted*, 2020 WL 32322 (E.D. Cal. Jan. 2, 2020). Accordingly, the undersigned finds that the seventh *Eitel* factor does not preclude default judgment.

In sum, six of the *Eitel* factors weigh in favor of default judgment, while the seventh factor does not weigh in favor—but does not preclude or weigh against—default judgment. For these reasons, the undersigned recommends the Court grant in part Plaintiff's Motion for Default Judgment, (Doc. 23), to the extent Plaintiff requests that the Court enter default judgment against Defendants Credit Mojo and Lambeth.

### 2. Terms of the Judgment and Proof of Relief

The undersigned next turns to the damages requested by Plaintiff. "A plaintiff seeking default judgment 'must . . . prove all damages sought in the complaint.'" *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *4 (N.D. Cal. Apr. 6, 2012). Plaintiff's complaint seeks the unpaid principal, interest, various fees (including attorney's fees) and costs. (Docs. 14 at 5; 23 at 2).

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Second

7

Amended Complaint seeks "the principal sum of $100,000;" "interest on said sum at the contractual rate per annum from July 19, 2024, through the date of entry of judgment, in an amount to be proven at the time of trial;" "[l]ate fee and other charges incurred as a result of the default, in addition to additional late charges that become due up to the date of trial, according to proof;" and "costs of suit." (Doc. 14 at 5).

In determining the appropriate sum for a default judgment, a court may rely on the affidavits or documentary evidence submitted by the plaintiff or order an evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2); *Microsoft Corp. v. Nop*, 549 F.Supp.2d 1233, 1235 (E.D. Cal. 2008) ("Where damages are liquidated (*i.e.*, capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing." (citation omitted)).

The agreement entered by the parties provides the following relevant terms:

> **LATE CHARGE.** If a payment is 11 or more days late, Borrower will be charged the greater of $25 or 5% of the regular scheduled payment.
>
> **INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Promissory Note will be increased by 6 percentage points. However, in no event will the interest rate exceed the maximum interest rate under applicable law.
>
> **DEFAULT.** The occurrence of any one or more of the following shall constitute an event of default ("Event of Default") under this Note:
>
> > **Payment Default.** Borrower fails to make any payment when due under this Note.
>
> **VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Wall Street Journal when a range of rates has been published, the higher of the rates will be used (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each first day of the following month after the change in the index. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 7.50% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 7.25% percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 14.750%.
>
> **INTEREST CALCULATION METHOD.** Interest shall be calculated from the date of each advance until repayment of each advance. Interest on this Note is

computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note upon or after the occurrence of any Event of Default, and Borrower will pay or reimburse Lender for all costs, fees and expenses so incurred by Lender. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

(Doc. 14 at 9–15).

### a. Damages

Both Plaintiff's complaint and motion for default judgment seek damages. (*See* Docs. 14 at 5; 23 at 2). Regarding a breach of contract claim, a plaintiff is entitled to recover "as nearly as possible the equivalent of the benefits of performance." *Lisec v. United Airlines, Inc.*, 11 Cal. Rptr. 2d 689, 691 (Cal. Ct. App. 1992). Moreover, a plaintiff is also entitled to prejudgment interest under California law. *See* Cal. Civ. Code § 3287(a) ("A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day."); *California v. Continental Ins. Co.*, 223 Cal. Rptr. 3d 716, 731 (Cal. Ct. App. 2017) ("Under [§ 3287(a)], prejudgment interest is allowable where the amount due plaintiff is fixed by the terms of a contract.").

The following table illustrates the monetary relief sought in this case.

| Description | Amount |
| --- | --- |
| Principal | $100,000.00 |
| Interest (with additional interest being awarded at the rate of $43.75 per day after September 15, 2025) | $18,506.25 |
| Late Charges | $859.80 |
| Attorney's Fees | $9,577.50 |
| Costs | $704.00 |

9

1   The Court will address the attorney's fees ($9,577.50) and costs ($704.00) separately below.

2       The undersigned finds that Plaintiff has adequately identified the specific amount of damages requested and provided sufficient declarations and other documentation to meet its burden of establishing an amount of damages. The principal amount of $100,000.00, late charges of $859.80, and interest amount of $18,506.25 (with additional interest being awarded at the rate of $43.75 per day after September 15, 2025) are all supported by the declaration of Michael P. McLennan and the Agreement. (*See* Docs. 14 at 9–15; 23-2). Accordingly, the undersigned recommends that Plaintiff's requests for the principal amount ($100,000.00), late charges ($859.80), and interest amount ($18,506.25 with additional interest being awarded at the rate of $43.75 per day after September 15, 2025) be granted.

### b.   Attorney's Fees and Costs of Litigation

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). California Civil Procedure Code § 1021 provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." Further, "parties to actions or proceedings are entitled to their costs." *Id.*

California Civil Code § 1717 "governs the issue of attorney's fees under a contract," *Makreas v. First Nat'l Bank of N. Cal.*, Case No. 11–cv–02234–JST, 2014 WL 2582027, at *5 (N.D. Cal. June 9, 2014), and provides in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce . . . that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a). Consistent with Section 1717(a), "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Margolin v. Reg'l Planning Comm'n of L.A. Cty.*, 185 Cal. Rptr. 145, 148 (Cal. Ct. App. 1982)

10

The amount of "[r]easonable attorney's fees shall be fixed by the court." Cal. Civ. Code § 1717(a). "[A]scertaining the fee amount is left to the trial court's sound discretion," as "[t]rial judges . . . are in the best position to assess the value of the professional services rendered in their courts." *Ellis v. Toshiba Am. Info. Sys., Inc.*, 160 Cal. Rptr. 3d 557, 582 (Cal. App. Ct. 2013), *as modified* (Aug. 14, 2013), *as modified on denial of reh'g* (Sept. 10, 2013). Nonetheless, "the California Supreme Court has emphasized that courts 'may not invoke equitable considerations unrelated to litigation success' to determine the size of a fee award." *Hopkins v. Wells Fargo Bank, N.A.*, Civ. No. 2:13–444 WBS CKD, 2014 WL 2987753, at *3 (E.D. Cal. July 1, 2014) (quoting *Hsu v. Abbara*, 891 P.2d 804, 813 (Cal. 1995)). Finally, "the burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable." *Gorman v. Tassajara Dev. Corp.*, 100 Cal. Rptr. 3d 152, 196 (Cal. Ct. App. 2009), *as modified on denial of reh'g* (Nov. 4, 2009).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000), *as modified* (June 2, 2000). As to the computation of hours, "trial courts must carefully review attorney documentation of hours expended." *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001). The Court must then exclude "hours that were not reasonably expended in pursuit of successful claims," *Harman v. City & Cty. of San Francisco*, 69 Cal. Rptr. 3d 750, 760 (Cal. Ct. App. 2007 (quoting *Harman v. City & Cnty. of San Francisco*, 39 Cal. Rptr. 3d 589, 612 (Cal. Ct. App. 2006)), "[a]ttorney time spent on services which produce no tangible benefit for the client," *Meister v. Regents of Univ. of Cal.*, 78 Cal. Rptr. 2d 913 (Cal. Ct. App. 1998), and "duplicative or excessive" work, *Graciano v. Robinson Ford Sales, Inc.*, 50 Cal. Rptr. 3d 273, 290 (Cal. Ct. App. 2006).

"Because time records are not required under California law . . . there is no required level of detail that counsel must achieve." *Syers Props. III, Inc. v. Rankin*, 172 Cal. Rptr. 3d 456, 462 (Cal. Ct. App. 2014). Indeed, "[i]t is well established that 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent.'" *Id.* at 461.

Here, the terms of the Agreement provide that Plaintiff shall be entitled to reasonable attorney's fees and costs incurred to enforce the contract. (*See* Doc. 23-2 at 14). Thus, the Court finds that Plaintiff is entitled to attorney's fees and costs under California law.

Plaintiff seeks attorney's fees in the amount of $9,577.50 for work performed at the following hourly rates: 18.6 hours at a rate of $425.00 per hour of attorney Jennifer T. Poochigian's time, 2.9 hours at a rate of $475.00 per hour for attorney Darryl J. Horowitt's time, and 1.5 hours at a rate of $225.00 per hour for paralegal Rin Bo's time. (*See* Doc. 23-3 at 4). Plaintiff also seeks a total of $704.00 in costs, which consists of the filing fee, service of process, and miscellaneous photocopies. (*Id.* at 6). In support of the fee and cost request, Plaintiff submits the declaration of Attorney Poochigian as to the billed hours. (*See id.* at 4–5).

i.   Hourly Rates

Attorney Poochigian's declaration states that she has been licensed to practice law in California since 2004, has "significant experience representing clients in commercial litigation, contracts, and collection cases," and is a partner at Colemen and Horowitt, LLP. (*Id.* at 4). The declaration also describes attorney Horowitt as a partner at Coleman and Horowitt, LLP and states that he has practiced for 44 years across a diverse set of subject matter, serving as lead trial attorney in over 40 trials, 30 arbitrations, and 70 mediations. (*See id.* at 5). The declaration does not provide any information about paralegal Bo's experience or qualifications. (*See id.*).

The undersigned finds that the requested rates of $425 for attorney Poochigian and $475 for attorney Horowitt are reasonable in light of the hourly rates awarded in the Eastern District, *see Siafarikas v. Mercedez-Benz USA, LLC*, No. 2:20-cv-01784-JAM-AC, 2022 WL 16926265, at *3 (E.D. Cal. Nov. 10, 2022) (approving the hourly rate of $500 for an attorney "who has practiced law for 21 years"); *BMO Harris Bank N.A. v. Ronsher Trans.*, No. 1:23-cv-00369-ADA-SAB, 2023 WL 4234665 at *10 (E.D. Cal. June 28, 2023) ("Hourly rates for attorney fees awarded in the Eastern District of California range from $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years.") (collecting cases), but that the rate for paralegal Bo does not reflect the prevailing market rate for attorneys of comparable skill, experience, and reputation, *see Rojas-Cifuentes v. ACX Pac. Nw. Inc.*, No. 2:14-CV-00697-CKD,

12

2025 WL 2731864, at *10 (E.D. Cal. Sept. 25, 2025) (reducing the paralegal rate to $200); *Wells v. DCI Donor Servs., Inc.*, No. 2:21-CV-00994-CKD, 2025 WL 2098702, at *10 (E.D. Cal. July 25, 2025) (same). Accordingly, the undersigned recommends reducing the hourly rate for paralegal Bo to $200.

### ii. Hours Reasonably Expended

Next, the Court proceeds to the second part of the lodestar analysis—the hours claimed to have been reasonably expended in this case. Regarding the number of hours requested, Plaintiff has provided evidence in the form of a declaration supporting Plaintiff's counsel's statement regarding the number of hours spent on this matter. (*See* Doc. 28). Under the pertinent California case law, this evidence is sufficient to support Plaintiff's request as to the total number of hours. *See, e.g.*, *Phillips 66 Co. v. California Pride, Inc.*, No. 116CV01102LJOSKO, 2017 WL 2875736, at *15 (E.D. Cal. July 6, 2017), *report and recommendation adopted*, No. 116CV01102LJOSKO, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) ("It is well established that 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent.'" (quoting *Syers Props. III, Inc.*, 172 Cal. Rep. 3d at 461)). Additionally, the undersigned is not aware of any information indicating that the number of requested hours is unreasonable. The undersigned therefore finds that the number of hours requested is reasonable.

### iii. Lodestar Review

In sum, the undersigned finds that the lodestar figures for Plaintiff's attorneys and paralegal are as follows: (1) Jennifer T. Poochigian, Esq.—$7,905.00; (2) Darryl J. Horowitt, Esq.—$1377.50; and (3) paralegal Rin Bo—$300.00. The resulting total lodestar figure is $9,582.50.

The undersigned next addresses whether it is appropriate to adjust this lodestar figure. After determining the lodestar amount, "[t]he lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *PLCM Grp.*, 997 P.2d at 518. These pertinent factors include "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Id.* at 519 (quoting

*Melnyk v. Robledo*, 134 Cal. Rptr. 602, 605 (Cal. Ct. App. 1976)). "In short, after determining the lodestar amount, the court shall then 'consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so that it is a reasonable figure.'" *Ellis*, 160 Cal. Rptr. 3d at 581–82 (quoting *EnPalm, LLC v. Teitler Family Tr.*, 75 Cal. Rptr. 3d 902, 906 (Cal. Ct. App. 2008)). "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." *PLCM Grp.*, 95 Cal. Rptr. 2d at 206. Finally, as "the relevant factors are considered only after the lodestar figure has been determined . . . an upward or downward adjustment from the lodestar figure will be far more common under California law than under federal law." *Weeks v. Baker & McKenzie*, 74 Cal. Rptr. 2d 510, 539 (1998) (citations omitted), *as modified on denial of reh'g* (June 2, 1998); *cf. Lealao v. Beneficial Cal., Inc.*, 97 Cal. Rptr. 2d 797, 815 (Cal. Ct. App. 2000) ("For example, certain factors California courts can use to enhance a lodestar award, such as the novelty and complexity of the issues, the special skill and experience of counsel, and the contingent nature of the recovery, cannot be used to increase an award in federal courts because they are presumed to be already incorporated into the lodestar figure." (citations omitted)).

The undersigned finds that the total lodestar figure of $9,582.50 is appropriate given the relative simplicity of this case, Plaintiff's success in the litigation, and the action's early resolution on default judgment. Additionally, the undersigned is aware of no pertinent reasons to adjust this lodestar figure. The undersigned also finds persuasive the decisions of courts in the Fresno division of the Eastern District of California approving comparable total attorney's fees amounts in similar cases—specifically, cases involving breach-of-contract claims that were resolved through default judgment, often for amounts almost double the lodestar figure here. *See, e.g.*, *Leprino Foods Co. v. JND Thomas Co.*, Case No. 1:16-cv-01181-LJO-SAB, 2017 WL 128502, at *14 (E.D. Cal. Jan. 12, 2017) (recommending attorney's fees in the amount of $21,400), *adopted in part by* 2017 WL 432480 (E.D. Cal. Feb. 1, 2017); *Bd. of Trs. of IBEW Local Union No. 100 Pension Tr. Fund v. Porges*, No. 1:11–cv–02048–LJO–SKO, 2013 WL 6596943, at *8 (E.D. Cal. Dec. 16, 2013) (approving total attorney's fees in the amount of $22,196.70); *Global Ampersand, LLC v. Crown*

*Eng'g & Constr., Inc.*, No. 1:07–CV–01692 OWN GSA, 261 F.R.D. 495, 502 (E.D. Cal. 2009) (approving attorney's fees in the amount of $17,375.00).

Based on the foregoing, the undersigned finds that deviation from the lodestar figure is not required in this case. Accordingly, the undersigned recommends that the presiding district court judge approve the lodestar figure—$9,582.50—as Plaintiff's total recoverable attorney's fees for this matter.

### iv.  Litigation Expenses and Costs

Finally, Plaintiff seeks to recover the costs and expenses advanced while prosecuting this litigation. The Agreement provides that the borrower shall "pay or reimburse Lender for all costs, fees and expenses so incurred by the lender . . . include[ing], subject to any limits under applicable law . . . Lender's legal expenses . . . [and i]f not prohibited by applicable law, Borrower also will pay any court costs." (Doc. 14 at 14).

Unlike the issue of attorney's fees, which are governed by state law, "the award of costs is governed by federal law under Rule 54(d)." *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); *see, e.g.*, *United States v. Safeco Ins. Co. of Am.*, 116 F.3d 487, at *2 (9th Cir. 1997) ("As a general proposition, an award of costs is governed by federal law under Rule 54(d)." (citations omitted)); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977) (applying federal law as to costs and California state law on the issue of attorney's fees); *Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *14 (E.D. Cal. Oct. 4, 2016) ("In a diversity action, federal not state law controls the issue of costs." (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995))); *Am. Boat Racing Ass'n v. Richards*, No. 2:14–cv–1909–KJM–KJN, 2015 WL 1320956, at *8 (E.D. Cal. Mar. 24, 2015) ("[F]ederal law governs the award of costs even in a diversity action." (citing *DCI Sols. Inc. v. Urban Outfitters, Inc.*, No. 10cv0369–IEG (BGS), 2012 WL 1409610, at *2 (S.D. Cal. Apr. 23, 2012))). 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citation omitted). The costs that are taxable under Section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for

printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).

Here, Plaintiff requests reimbursement in the amount of $704 for the following costs: (1) $405 paid for the filing of the complaint, (2) $180 spent on the service of process on Defendant Credit Mojo, (3) $115 spent on the service of process on Defendant Lambeth, and (4) $4 for miscellaneous photocopies. (Doc. 23-1 at 8). The undersigned finds that Plaintiff provided sufficient documentation in the form of attorney Poochigian's declaration demonstrating that Plaintiff incurred $400 in filing fees, $295 in service fees, and $4 in copying fees during the course of this action. (*See* Doc. 28.) These costs for service, filing, and copying fees are properly recoverable by Plaintiff. *See, e.g.*, *Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *10 (E.D. Cal. Nov. 9, 2016) ("The costs associated with filing this action and serving [the defendants] are properly recoverable by [the plaintiff]." (citations omitted)); *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, at *10 (E.D. Cal. Mar. 5, 2009) ("Marshal's fees and fees for service by a person other than the Marshal under [Federal Rule of Civil Procedure] may be recovered; private process servers' fees are properly taxed as costs." (citing *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990))); *see generally Alflex Corp.*, 914 F.2d at 178 ("In making Marshal's fees taxable as costs in section 1920(1), we believe Congress exhibited an intent to make service of process a taxable item . . . . Now that the Marshal is no longer involved as often in the serving of summonses and subpoenas, the cost of private process servers should be taxable under 28 U.S.C. § 1920(1).").

Therefore, the undersigned recommends that Plaintiff be awarded $705 in total costs—$405 for "filing fees," $295 for "service fees," and $4 for copying fees.

For the reasons set forth above, the undersigned recommends Plaintiff be awarded **$9,582.50** in attorney's fees and **$705.00** for the costs of suit. Thus, the total award of fees and costs recommended is **$10,286.50**.

## IV.     RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, it

16

is HEREBY ORDERED that the hearing on Plaintiff's motion for default judgment, (Doc. 23), set for December 10. 2025, is VACATED.

The undersigned RECOMMENDS that the Court:

1. GRANT IN PART Plaintiff's motion for default judgment (Doc. 23), insofar as Plaintiff requests that the Court enter default judgment against Defendants Credit Mojo, LLC and Rondi R. Lambeth;

2. Enter judgment against Defendants Credit Mojo, LLC and Rondi R. Lambeth in the amount of $119,366.05, plus additional interest being awarded at the rate of $43.75 per day after September 15, 2025;

3. Award attorney's fees to Plaintiff in the amount of $9,582.50;

4. Award costs to Plaintiff in the amount of $750.00.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the defendants at the defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within twenty-one (21) days of service** of these findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**November 24, 2025**__              */s/ Sheila K. Oberto*
                                                              UNITED STATES MAGISTRATE JUDGE